UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PAMELA G.-T.,[1]

        Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 2:18-cv-00889-JO

OPINION AND ORDER

JONES, Judge:

    Pamela G.-T. (Plaintiff) seeks judicial review of the final decision by the Commissioner of Social Security (Commissioner) denying her applications for disability insurance benefits under Title II of the Social Security Act (the Act). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

Page 1 - OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). When the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## THE ALJ'S FINDINGS ON THE FIVE-STEP SEQUENTIAL INQUIRY

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ uses a five-step sequential inquiry. *See* 20 C.F.R. §§ 404.1520, 416.920.

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2013, the alleged onset date. Tr. 20. The ALJ found that under the Act, Plaintiff qualified as insured through December 31, 2018. Tr. 20.

At step two, the ALJ found Plaintiff had the severe impairments of carpal tunnel syndrome, depression, anxiety, and irritable bowel syndrome. Tr. 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 21. The ALJ then assessed

Plaintiff's residual functional capacity (RFC), finding Plaintiff could perform a modified range of light work, able to lift, carry, push, or pull 20 pounds at a time occasionally and 10 pounds frequently. Tr. 23. Plaintiff could sit, stand, and walk for 6 hours each per 8-hour workday. She could frequently reach, handle, finger, and feel bilaterally. Plaintiff was "limited to routine and repetitive tasks, though not at a production-rate pace," and was "limited to simple work-related decisions utilizing judgment and dealing with changes in the work setting, and she is limited to only occasional interaction with others." Tr. 23. Plaintiff "would be off task up to 5 percent of an 8-hour workday in addition to normal breaks." Tr. 23.

At step four, the ALJ found Plaintiff could not perform her past relevant work as a janitor. Tr. 33.

At step five, the burden of production shifts from the claimant to the Commissioner. *Bustamonte v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 404.1560(c)(2) (agency is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do"). The Commissioner must present evidence that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

Here, based on the testimony of a vocational expert, the ALJ found Plaintiff could perform occupations that exist in significant numbers in the national economy, including router, cleaner/housekeeping, and electrical accessories assembler. Tr. 34. The ALJ therefore found Plaintiff not disabled from the alleged onset date in 2013 through the date of the decision in 2017. Tr. 34.

## DISCUSSION

Plaintiff contends that the ALJ improperly evaluated (1) the opinions of mental health care providers, and (2) Plaintiff's subjective statements about her mental health symptoms. Pl.'s Opening Br. 3, ECF No. 12. Plaintiff does not challenge the ALJ's findings on the limitations caused by her physical impairments.

### I. The ALJ's Assessment of Medical Opinion Evidence

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Commissioner*, 807 F.3d 996, 1006 (9th Cir. 2015). Here, I find that substantial evidence supports the ALJ's interpretation of the medical opinion evidence.

#### A. Dr. Weniger's Psychological Evaluation

In 2014, Robert Weniger, Psy. D., performed a neuropsychological evaluation of Plaintiff on a referral from the Oregon Office of Vocational Rehabilitation Services. Tr. 512-22. The ALJ gave Dr. Weniger's evaluation of Plaintiff "some weight." Tr. 30. While noting that Dr. Weniger's evaluation "was performed in the context of the claimant's participation in vocational rehabilitation services," the ALJ found "nothing from the evaluation that would suggest the claimant cannot perform unskilled work that involves no more than occasional contact with others," consistent with the RFC. Tr. 29.

The ALJ found Dr. Weniger's report indicated Plaintiff's mental impairments would cause only mild to moderate difficulties in the workplace. The ALJ stated that "[f]ollowing significant objective testing, clinical interview, and mental status examination, [Dr. Weniger] noted the claimant's performance suggested general intellectual ability in the average range and she was able to effectively regulate her attention, mental manipulate information, sustain focused attention over time, and alternate her attention between multiple demands simultaneously." Tr.

29. The ALJ cited Dr. Weniger's findings that Plaintiff performed in the average range on memory tests, "exhibited several well-developed executive functioning skills, including planning, organization, mental flexibility, and problem-solving," and did not have cognitive weaknesses indicating a cognitive disorder. Tr. 29.

The ALJ acknowledged Dr. Weniger's opinion that Plaintiff's "mood symptoms may contribute to practical problems with cognition in daily life," while noting Dr. Weniger's finding that Plaintiff's "global assessment of functioning (GAF) scale score" was 60, "at the top of the range indicative of moderate symptoms or difficulties."[2] Tr. 29. The ALJ emphasized that "a [GAF] score of 61 would fall into the range indicative of only mild symptoms or difficulties." Tr. 29.

Plaintiff argues that ALJ erred by failing to address "Dr. Weniger's comments about struggling to cope effectively, increased risk of tardiness/absence, and periodic . . .breaks on an 'as-needed' basis." Pl.'s Opening Br. 7, ECF No. 12; Tr. 521. However, Plaintiff concedes that the RFC's limitation to occasional social interaction at work "may . . . be sufficient" to address Dr. Weniger's findings on Plaintiff's ability to function in the workplace. Pl.'s Opening Br. 7.

Plaintiff also cites Dr. Weniger's statements that Plaintiff "may" have attendance problems, and "may" benefit from regular breaks and breaks as needed. Tr. 521. I agree with Defendant, however, Dr. Weniger's conditional statements are recommendations, not "specific imperatives." *See Rounds v. Commissioner*, 807 F.3d 996, 1006 (9th Cir. 2015) ("An ALJ may rationally rely on specific imperatives, rather than recommendations."). Dr. Weniger's statement

---

[2] "'A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.'" *Garrison*, 759 F.3d at 1002 n.4 (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). GAF scores, while not controlling, "may be a useful measurement." *Id.*

Page 5 - OPINION AND ORDER

that Plaintiff "will" struggle to cope with stress in the workplace does not conflict with the RFC, which accounts for this limitation by limiting Plaintiff's social interactions.

Dr. Weniger concluded that Plaintiff "appeared to possess the intellectual, cognitive, and academic skills to perform a relatively broad range of vocational activities." Tr. 522. Substantial evidence supports the ALJ's conclusion that Dr. Weniger's evaluation was consistent with the RFC.

### B. The Opinions of Halleman and Dr. Phillips

Plaintiff contends that the ALJ erred in assigning little weight to the opinions of Haley Halleman, P.A.-C, and John H. Phillips, M.D., Halleman's supervising physician. In July 2016, Halleman completed a form submitted by Plaintiff's attorney concerning physical and mental impairments. Tr. 1064-67. Halleman stated that Plaintiff's impaired "attention and concentration" would cause her to be "unable to perform even simple work tasks" for 10% of a standard work week, or four hours. Tr. 1067.

The ALJ found no evidence that Dr. Phillips himself had ever treated Plaintiff. Tr. 27. At the hearing, Plaintiff's attorney admitted that Halleman apparently had "just [written] in the name of the doctor" on the evaluation form rather than obtaining his signature. Tr. 44. Dr. Phillips signed the evaluation form after the hearing. Tr. 1072-73.

Given the lack of evidence that Dr. Phillips treated Plaintiff or actively supervised Halleman's treatment of Plaintiff, I agree with the ALJ that Dr. Phillips's belated signature adds little or no weight to Halleman's opinions. Tr. 27. As a physician's assistant, Halleman is not an "acceptable medical source," but rather an "other source." *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (acceptable medical sources are generally limited to physicians and other qualified specialists); 20 C.F.R. § 404.1513(a) & (d)(1) (physician's assistants and nurse

practitioners are considered "other sources"). An ALJ may discount testimony from an "other source" such as Halleman by giving germane reasons for doing so. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016). Here, the ALJ also noted there is no evidence Halleman has expertise in mental health treatment, further limiting the usefulness of her opinion on Plaintiff's mental impairments. Tr. 31.

Even if Halleman is considered an acceptable medical source, the record supports the ALJ's decision to discount her opinion, which is contradicted by the reports of two examining psychologists. Dr. Weniger opined that Plaintiff "was able to sustain focused attention and inhibit behavioral impulses." Tr. 517. In a post-hearing psychological evaluation of Plaintiff, David R. Starr, Ph. D., found that Plaintiff's mental impairments did not affect her ability to understand, remember, and carry out instructions. Tr. 1102.[3] In discounting Halleman's opinions, the ALJ properly resolved conflicts in the medical evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Plaintiff also argues that the ALJ failed to specifically address Halleman's opinion that Plaintiff would be off-task 10% of the time. The ALJ cited Halleman's opinion on this limitation, but noted that Plaintiff "is generally described as having normal attention and concentration even when reporting increased mental health symptoms related to increased psychosocial stressors." Tr. 31. The ALJ found Plaintiff would be off-task 5% of the time because of her "digestive issues," not mental impairments. Tr. 26. The ALJ could properly reject the 10% off-task limitation because it conflicted with evidence that Plaintiff could focus on tasks despite mental impairments. *See, e.g.*, Tr. 513 (Dr. Weniger's evaluation states Plaintiff

---

[3] The ALJ did not fully accept Dr. Starr's opinions, finding that while they were "generally supported by the benign mental status examination findings," "the totality of the evidence shows at least a moderate level of impairment." Tr. 32.

Page 7 - OPINION AND ORDER

"acknowledged mild difficulty focusing and concentrating," although she could "multi-task 'pretty well'"). I conclude that substantial evidence supports the ALJ's decision to give little weight to Halleman's opinion.

## II. Plaintiff's Subjective Statements About Mental Health Impairments

The ALJ did not fully accept Plaintiff's subjective statements about the severity of her physical or mental impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, as is true here, then "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). When evaluating subjective symptoms, the ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *4.

Here, I conclude that the ALJ gave specific, clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's subjective complaints about her mental impairments. Plaintiff does not challenge the ALJ's decision to discount her subjective complaints based on physical impairments. I agree with Defendant that the ALJ could apply his findings on Plaintiff's physical impairments to his evaluation of her complaints about mental impairments. Def.'s Responsive Br. 4, ECF No. 14; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found that claimant's "lack of candor" as to her use of drugs and

alcohol "carries over" to her descriptions of physical pain); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

In concluding that Plaintiff's subjective complaints were not fully consistent with the record, the ALJ found that medication adjustments had resulted in improvement and that "mental status examinations consistently describe normal attention and concentration, which . . . overall is not suggestive of disabling-type symptomatology." Tr. 30. The ALJ noted that mental health assessments performed in 2015 and 2016 included "GAF scale scores mostly staying the range indicative of only moderate symptoms or difficulties." Tr. 30. While acknowledging that a GAF scale score is generally assigned minimal weight because it "is a one-time snapshot that subjectively factors in non-impairment related issues such as unemployment, housing issues, and other psychosocial stressors," the ALJ found "it cannot be overlooked that in this case, that primarily the claimant's assigned scores showed no more than moderate symptoms or difficulties, consistent with non-disabling mental health symptoms." Tr. 33.

The ALJ also cited Plaintiff's activities as evidence undermining her subjective symptom testimony, finding that she had not shown "marked limitations with regard to social functioning." Tr. 31. The ALJ found Plaintiff had "described significant activities of daily living," noting that as of March 2016, she had a boyfriend, attended church, and enjoyed spending time with her daughters, watching movies, and going to Hot Springs. Tr. 32. By the time of the hearing in August 2016, Plaintiff was living "in a trailer with her daughters on her mother's land," getting up between 5 and 7 a.m., cleaning her home, and taking care of pigs, chickens, cats, and dogs. Tr. 32. Plaintiff "gathers cans for extra money, she shops, she cooks, and she is able to drive. She spends her evenings helping her daughters with homework and watching television." Tr. 32.

Plaintiff argues that while "there are times when Plaintiff is able to socialize and enjoy herself despite her limitations," her activities do not show that she could "persist in a competitive work environment." Pl.'s Opening Br. 11. Although there is evidence for Plaintiff's interpretation of the record, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Commissioner*, 359 F.3d 1190, 1196 (9th Cir. 2004). If, as is true here, the evidence supports more than one rational interpretation, this court must defer the ALJ's reasonable decision, including findings on credibility and evidentiary conflicts. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Substantial evidence supports the ALJ's finding that Plaintiff's activities of daily living showed her mental health impairments were not as limiting as she alleges.

Reviewing the records of Plaintiff's mental health treatment, the ALJ found that "the progress notes describe generally waxing and waning-type symptoms, often correlating to various psychosocial stressors mostly attributed to her relationship/divorce with her now ex-husband, the claimant living independently for the first time (with her daughters), and housing issues, as well as an arrest for DUI (alcohol-related) in March 2015." Tr. 30. Defendant argues that the ALJ properly interpreted the evidence to find temporary situational stressors caused Plaintiff's more severe psychological symptoms, and so did not satisfy the requirement that a disabling impairment must "last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Plaintiff responds that cycles of improvement and relapse are common in mental

illness. Plaintiff cites Ninth Circuit authority that ALJs should not cherry-pick the record for "a few isolated instances of improvement over a period of months or years and . . . treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

Here, substantial evidence supports the ALJ's finding that Plaintiff's subjective mental health symptoms were situational. Even if the ALJ erred in citing the sporadic nature of Plaintiff's mental health symptoms as a reason to give her symptom testimony less weight, the ALJ's other reasons for discounting Plaintiff's subjective symptom assertions are sufficient to support his decision. Any error was harmless. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008) (it is harmless error if the ALJ relied on an improper reason for discounting subjective complaints when the other remaining reasons properly supported the decision).

Plaintiff contends that *Dale v. Colvin*, 823 F.3d 941 (9th Cir. 2016), requires ALJs to separately reject each part of a claimant's testimony. In *Dale*, the ALJ gave "limited weight" to a nurse practitioner's testimony after dividing the testimony into two parts: (1) exertional and postural limitations and (2) manipulative and mental limitations. *Id.* at 945. The ALJ reasonably found that the nurse practitioner's treatment notes did not support her evaluation of the claimant's exertional and postural limitations. *Id.* at 944. But the ALJ gave no reason for discounting the nurse practitioner's assessment of the claimant's manipulative and mental limitations. *Id.* The Ninth Circuit held that "an ALJ errs when he discounts an other source's entire testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." *Id.* at 945.

*Dale* does not apply here. *Dale* addressed only "other source" opinions, not the statements of a claimant. Furthermore, Plaintiff has not identified subjective complaints the ALJ

improperly failed to address. After reviewing the entire record, I conclude that the ALJ's decision is supported by substantial evidence and applied the correct legal standards.

## CONCLUSION

The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED January 24th, 2020.

Robert E. Jones
United States District Judge